In the Matter of STANLEY N. AUSBROOKS et al., Petitioners, v RODERICK G. W. CHU et al., Constituting the New York State Tax Commission, Respondents. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the State Tax Commission which, *inter alia,* sustained personal income tax assessments for the years 1971, 1972 and 1977.

The issue in this case is whether the State Tax Commission correctly determined that the Copem partnerships were not carrying on a business in New York State and that petitioners were not entitled to deduct Stanley Ausbrooks' distributive share of Copem partnership losses on their New York State nonresident income tax returns. We conclude that the determination of the Tax Commission is not supported by substantial evidence; it should therefore be annulled, the petition granted and the matter remitted to the Tax Commission for further proceedings.

Petitioners, Stanley N. Ausbrooks and Virginia Ausbrooks, are nonresidents of New York State who filed joint New York State nonresident personal income tax returns for 1971 and 1972 and nonresident New York State and City personal income tax returns for 1977. They took a deduction on these returns for losses sustained by Stanley N. Ausbrooks as a limited partner in a series of partnerships known as Copem 71, Copem 72, Copem Marts and Copem 73. These partnerships were created to permit Ausbrooks and other partners of the certified public accounting firm of Peat, Marwick, Mitchell and Company (PMM) to invest in various business opportunities. Partners in the firm were limited in their ability to invest because they were prohibited from dealing with anyone who had a relationship with the large accounting firm. The prohibition virtually precluded investment in publicly held companies. The PMM partner in charge of business opportunities for the partners, James W. Cumpton, testified at the hearing before the Tax Commission that the Copem partnerships were established as profit-making enterprises which invested in a variety of projects, mostly involving real estate. The Copem partnerships would arrange financing and construction for such developments as garden and mobile home parks. Copem activities were conducted from 345 Park Avenue in New York City, the location of PMM offices. A flat monthly fee was paid by the Copem partnerships to PMM for

office space. Expenses incurred for postage, messenger services and the like were billed to the partnerships by PMM on an "as use" basis.

Petitioners timely objected when the State Department of Taxation and Finance ruled that they had improperly deducted Stanley N. Ausbrooks' distributive share of Copem partnership losses for the years in question and assessed deficiencies against them. After a formal hearing, the Tax Commission decided that the Copem partnerships were created for personal investment and were not a business as defined by the Tax Law. However, certain of the deficiencies originally found were reduced for reasons of proof. Petitioners, in this proceeding, seek a review of that determination.

The Tax Commission's contention that the evidence produced at the hearing supports its position that the Copem partnerships were purely personal investment vehicles and did not carry on any business activities is not supported by substantial evidence. The facts in the case at bar are substantially analogous to those in *Matter of Vogt v Tully* (53 NY2d 580, 587-588), and that decision, therefore, must control here. The testimony introduced at the hearing before the Tax Commission established that the Copem partnerships were limited partnerships created for investment purposes which were supervised by three general partners. Office activities were located at PMM's New York City office, which served as the Copem partnerships' sole place of business. Managing general partner Cumpton testified that he spent approximately 450 hours on partnership work during the period at issue, July 1, 1971 to July 1, 1973.[*] Another partner spent 111 hours during that period. Cumpton said that work for the Copem partnerships represented anywhere from one third to one half of his total working time during the start-up phase of the 1971 and 1972 Copem projects. The Copem partnerships also engaged a full-time administrator.

Although the Copem partnerships did not evince ownership in any of the investments, nor did they manage the activities of the so-called "second-tier" partnerships, the Tax Commission's characterization of the partnerships' activities as not carrying on a business lacks substantial evidentiary support in the record. The partnerships selected investment opportunities, were involved with the financing arrangements and took an active role in the functioning of the second-tier partnerships in the sense that they monitored financial trends and the progress of their investments.

---

[*]  It should be noted that January 1, 1973 to July 1, 1973 was not in issue in this proceeding and there was no evidence of time spent in 1977.

The operations of the Copem partnerships, although typically involving projects of more limited duration than the regular and systematic activities carried on in the *Vogt* case (*supra*), nonetheless required systematic and regular activities and were conducted with a sufficient measure of permanency and continuity, as suggested by the regulations, to be a business (see 20 NYCRR 131.4 [a] [2]).

Determination annulled, with costs, petition granted and matter remitted to the State Tax Commission for further proceedings not inconsistent herewith. Kane, J. P., Main, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.